UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH MCGUNIGLE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-10852-JLT |
| | * | |
| CITY OF QUINCY, PAUL KEENAN, | * | |
| in his Individual and Official Capacities, and | * | |
| JOHN DOUGAN, in his Individual and | * | |
| Official Capacities, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

May 16, 2013

TAURO, J.

I.      Introduction

        Plaintiff Joseph McGunigle, a former Quincy police officer, brings a claim under 42 U.S.C.

§ 1983 against Defendants the City of Quincy, Chief of Police Paul Keenan, and Captain John

Dougan.  Plaintiff claims that while he was a Quincy police officer, Defendants retaliated against

him for protected speech in violation of his First Amendment and Equal Protection Clause rights.

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6).  For the reasons

set forth below, Defendants' Motions to Dismiss [#12, #14] are DENIED as to Plaintiff's First

Amendment claim, and ALLOWED as to Plaintiff's Equal Protection claim.[1]

---

[1] Defendant City of Quincy has requested additional time to brief its motion to dismiss
Plaintiff's state law claims.  Def.'s Mem. Supp. Mot. Dismiss 13 [#13].  As a result, the court will
allow the parties to submit supplemental briefs before the court rules on the remaining state law
claims.

II.   <u>Factual Background</u>[2]

On September 28, 2006, Plaintiff and his wife purchased a home at 45 Post Island Road, Quincy, Massachusetts.[3]  Soon after moving into their new home, Plaintiff and his wife began noticing rampant violations and non-enforcement of Quincy dog leash ordinances.[4]  Plaintiff observed dogs roaming around the neighborhood without leashes and defecating on residents' yards and the nearby beach.[5]

Plaintiff also observed unleashed dogs attack humans and other animals.  In December 2006, an unleashed dog chased and struck Plaintiff while he was jogging.[6]  On January 3, 2007, an unleashed dog attacked Plaintiff's puppy.[7]  In March 2007, an unleashed dog attacked a mother holding a three-month-old child.[8]  This incident prompted public outcry and the police held a hearing at the Quincy Police Station regarding the incident.[9]

Plaintiff made numerous complaints to city officials regarding the ongoing violations and non-enforcement of dog ordinances in his neighborhood.  In December 2006, Plaintiff requested

---

[2] The following facts are taken from Plaintiff's <u>Complaint</u> [#1], unless otherwise indicated, and presented in the light most favorable to Plaintiff.

[3] Compl. ¶ 5.

[4] Compl. ¶ 6.

[5] Compl. ¶ 6.

[6] Compl. ¶ 9.

[7] Compl. ¶ 10.

[8] Compl. ¶ 12.

[9] Compl. ¶ 12.

that the City install a "Mutt Mitt box" with dog bags near the beach.[10]  Plaintiff also made

complaints to Animal Control Officer Don Conboy,[11] City Councilor Leo Kelly,[12] and Mayor

William Phelan.[13]  In June 2007, Plaintiff asked the Conservation Commission to send a letter to a

neighbor explaining that the neighbor did not own the beach behind his house.[14]

During this same time period, Plaintiff was employed as a Quincy police officer and issued

a number of citations to dog owners for dog ordinance violations.[15]  On May 24, 2007, Police

Chief Crowley ordered Plaintiff to stop issuing dog ordinance citations.[16]  After three months of

inaction from the City, Plaintiff began issuing dog ordinance citations again.[17]  On September 12,

2007, Chief Crowley suspended Plaintiff for five days.[18]  Plaintiff appealed the suspension on the

ground that Crowley's order to stop issuing citations was unlawful.[19]  Plaintiff prevailed at

arbitration and the arbitrator vacated his suspension.[20]

---

[10] Compl. ¶ 8.

[11] Compl. ¶¶ 14, 15, 22.

[12] Compl. ¶ 15.

[13] Compl. ¶ 27.

[14] Compl. ¶ 25.

[15] Compl. ¶ 17.

[16] Compl. ¶¶ 18, 19.

[17] Compl. ¶ 28.

[18] Compl. ¶ 29.

[19] Compl. ¶ 29.

[20] Compl. ¶ 35.

On September 15, 2007, Plaintiff made several statements to Channel 7 News regarding non-enforcement of dog ordinances in Quincy that aired as part of two live segments.[21]  On September 23, 2007, the Boston Globe published an article regarding the dog situation in Quincy, which included statements by Plaintiff.[22]

Plaintiff's statements to news organizations angered Defendants.[23]  Defendants began a campaign of retaliation against Plaintiff for his speech.[24]  For instance, Defendants (1) ordered Plaintiff to surrender his service weapon and undergo a psychological evaluation without a lawful basis in July through August 2009;[25] (2) denied Plaintiff proper Family and Medical Leave Act ("FMLA") time in January through April 2010;[26] (3) denied Plaintiff his personnel file in October 2011;[27] and (4) revoked Plaintiff's "license to carry" in March 2012.[28]  Defendants also engaged in unwarranted discipline, including suspending Plaintiff in March 2008 and July 2011, and seeking Plaintiff's termination in April 2012.[29]  Plaintiff filed this action on May 11, 2012.

III.   Discussion

---

[21] Compl. ¶ 30, Ex. B.

[22] Compl. ¶ 31, Ex. C.

[23] Compl. ¶ 32.

[24] Compl. ¶¶ 32, 36, 38, 50.

[25] Compl. ¶¶ 38, 41.

[26] Compl. ¶¶ 38, 46-49.

[27] Compl. ¶ 57.

[28] Compl. ¶¶ 58-59.

[29] Compl. ¶¶ 33-37, 51-52, 60-61.

A.    <u>Legal Standard</u>

A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief."[30]  In deciding a Rule 12(b)(6) motion to dismiss, the court must

accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of

the plaintiff.[31]  The court need not, however, accept the plaintiff's legal conclusions as true.[32]  To

survive dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible

on its face."[33]

B.    <u>Defendants' Motions to Dismiss Count III</u>

In Count III, Plaintiff brings a claim under 42 U.S.C. § 1983 for violation of his Equal

Protection Clause and First Amendment rights.  Plaintiff alleges that he spoke out regarding

widespread violations and non-enforcement of dog ordinances in Quincy.  In particular, Plaintiff

alleges that he made complaints to news organizations, the mayor, a city councilor, an animal

control officer, and the Conservation Commission.  Plaintiff further claims that Defendants

retaliated against him for this protected speech.  Defendants move to dismiss Count III on several

grounds.  The court addresses each of Defendants' arguments in turn.

i.    <u>Statute of Limitations</u>

Defendants argue that Count III is time-barred.  There is no federal statute of limitations

for § 1983 claims.  Instead, § 1983 borrows the forum state's statute of limitations for personal

---

[30] Fed. R. Civ. P. 8(a)(2).

[31] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009).

[32] <u>Id.</u>

[33] <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

injury claims.[34]  Under Massachusetts law, the applicable statute of limitations is three years.[35]

Federal law determines the date of accrual.[36]  A § 1983 claim accrues when the plaintiff "knows

or has reason to know of the injury which is the basis for his claim."[37]

 Plaintiff filed this suit on May 11, 2012.  Plaintiff alleges a number of retaliatory

employment decisions spanning from 2007 until 2012.  Some of Plaintiff's allegations are timely;

others are not.  Retaliatory acts that took place on or after May 11, 2009 fall within the statute of

limitations period and are therefore timely and actionable.[38]  Plaintiff may seek damages for these

allegations.  In contrast, retaliatory acts that took place prior to May 11, 2009 are untimely and

no longer actionable.[39]  Plaintiff, for instance, may not recover for his 2007 and 2008 suspensions.


 Plaintiff argues that the "continuing violation doctrine" applies to allow recovery for his

pre-May 11, 2009 allegations.  "The continuing violation doctrine is an equitable exception to the

statute of limitations."[40]  It "allows an employee to seek damages for otherwise time-barred

allegations if they are deemed part of an ongoing series of discriminatory acts and there is 'some

---

[34] Phillips v. City of Methuen, 818 F. Supp. 2d 325, 330 (D. Mass. 2011) (citing Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004)).

[35] Id. (citing Mass. Gen. Laws ch. 260, § 2A (2006)).

[36] Id. (citing Rodriguez-Garcia, 354 F.3d at 96).

[37] Id. (quoting Rodriguez-Garcia, 354 F.3d at 96-97).

[38] See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).

[39] See id. at 114-15.

[40] Phillips, 818 F. Supp. 2d at 330.

violation within the statute of limitations period that anchors the earlier claims.'"[41]  "This 'ensures that these plaintiffs' claims are not foreclosed merely because the plaintiffs needed to see a pattern of repeated acts before they realized that the individual acts were discriminatory.'"[42]

There are two types of continuing violations: serial and systematic.[43]  Plaintiff argues that he suffered a serial violation.  The serial violation exception does not apply if the untimely retaliatory act was a discrete act of "sufficient permanence" that should have triggered "an awareness of the need to assert one's rights."[44]

The continuing violation doctrine does not apply in this case to allow Plaintiff to recover for his otherwise untimely 2007 and 2008 suspensions.  These suspensions are discrete acts of "sufficient permanence" that should have prompted Plaintiff to assert his legal rights.  "Suspension from active duty is the type of injury that is immediately recognizable as such, and that should give rise to a request for a remedy."[45]  The clock started as to Plaintiff's 2007 and 2008 suspensions the days they occurred.  As a result, Plaintiff's pre-May 11, 2009 allegations are time-barred.  Plaintiff may move forward as to his post-May 11, 2009 allegations.

ii.   Equal Protection Clause Claim

In Count III, Plaintiff alleges a violation of his Equal Protection Clause rights.  As Plaintiff

---

[41] O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001) (quoting Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998)).

[42] Id. (quoting Thomas v. Eastman Kodak Co., 183 F.3d 38, 54 (1st Cir. 1999)).

[43] Thomas, 183 F.3d at 53 (citing cases).

[44] Phillips, 818 F. Supp. 2d at 330 (quoting O'Rourke, 235 F.3d at 731); see also Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130-31 (1st Cir. 2009).

[45] Phillips, 818 F. Supp. 2d at 331.

does not allege membership in a protected class, he is left to proceed under a "class-of-one" theory. The problem for Plaintiff, however, is that the Supreme Court has squarely held that "the class-of-one theory of equal protection does not apply in the public employment context."[46] Because Plaintiff's allegations arise in the public employment context, his Equal Protection Clause claim is dismissed.

>       ii.   First Amendment Claim

In Count III, Plaintiff also claims that Defendants violated his First Amendment rights when they took adverse employment actions against him in retaliation for protected speech.

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment."[47] "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."[48] "The basic rule in such cases is that government officials may not take adverse action against a public employee for speaking 'as a citizen on a matter of public concern' unless there is 'an adequate justification for treating the employee differently from any other member of the general public.'"[49]

To determine whether an adverse employment decision violates a public employee's First Amendment rights, courts ask (1) whether the employee spoke on a matter of public concern, (2) whether the employee spoke as a citizen, (3) whether the relevant interests of the employee and

---

[46] Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008).

[47] Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).

[48] Id. (citing cases).

[49] Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 23 (1st Cir. 2010) (quoting Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007)).

public outweigh those of the government employer, and (4) whether the employee's speech was a "substantial or motivating factor in the adverse employment decision."[50]  Even if all four prongs are satisfied, "the employer may still escape liability if it can show that 'it would have reached the same decision even absent the protected conduct.'"[51]

Defendants argue that Plaintiff fails to plausibly allege the first three prongs.

1.    Matter of Public Concern

Under the first prong, the court must determine whether Plaintiff's speech relates to "matters of public concern," or, "matters only of personal interest."[52]  A matter of public concern is one that relates to "any matter of political, social, or other concern to the community."[53]

Certain subject matters are of *inherent* public concern, such as official malfeasance and neglect of duties.[54]  Where speech relates to a matter of *inherent* public concern, the court need not inquire further.[55]  In contrast, where speech does not relate to a matter of *inherent* public concern, the court must examine the form and context of the speech, with an eye to (1) "whether the community has *in fact* manifested a legitimate concern" in the subject, and (2) whether the employee's speech "suggests a subjective intent to contribute to . . . public discourse."[56]

---

[50] Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (citing cases).

[51] Id. at 29-30 (quoting Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 765-66 (1st Cir. 2010)).

[52] Connick v. Myers, 461 U.S. 138, 147 (1983).

[53] Davignon v. Hodgson, 524 F.3d 91, 101 (1st Cir. 2008) (quoting id. at 146).

[54] Decotiis, 635 F.3d at 30.

[55] Id.

[56] O'Connor v. Steeves, 994 F.2d 905, 914 (1st Cir. 1993) (emphasis in original).

Plaintiff allegedly spoke out in a number of forums on the subject of widespread violations and non-enforcement of dog leash and dog waste ordinances in Quincy.  According to Plaintiff, dogs in Quincy roamed around unleashed, defecated in residents' yards, and attacked humans and other animals.  Viewing the allegations in the complaint in the light most favorable to Plaintiff, his speech plausibly relates to a matter of inherent public concern – that is, official neglect of duties and non-enforcement of public health and safety laws.[57]  Accordingly, Plaintiff's allegations satisfy the first prong of the employee-speech analysis.[58]

## 2.    Garcetti Analysis

Under the second prong, the court must determine whether Plaintiff spoke "as a citizen," or alternatively, "pursuant to [his] official duties."[59]  Plaintiff's speech is not protected if he spoke pursuant to his official duties as a police officer.  In conducting this analysis, courts ask "(1) what are the employee's official responsibilities? and (2) was the speech at issue made pursuant to those responsibilities?"[60]  This inquiry has proven to be "tricky business" at the pleadings stage

---

[57] See Jordan v. Carter, 428 F.3d 67, 73 (1st Cir. 2005) ("Certainly, if either official misconduct or neglect of duties was asserted to be responsible for unsafe conditions for the general public, this would be a matter of public importance.").

[58] Plaintiff's allegations would also pass muster under a more complete Connick analysis. The fact that Plaintiff may have been motivated in part by self-interest as a Quincy resident is not determinative because Plaintiff's speech had a "sufficient public dimension."  See Fabiano v. Hopkins, 352 F.3d 447, 455 (1st Cir. 2003).  Additionally, the complaint indicates that the Quincy community did in fact manifest a legitimate concern in the subject.  See Compl. ¶¶ 10-12, Ex. C (Boston Globe article) (starting with "Plaintiff has defenders among his neighbors . . . .").

[59] Garcetti v. Ceballos, 547 U.S. 410, 421-22 (2006).

[60] Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 26 (1st Cir. 2010).

because it "is so highly fact intensive and context specific."[61]

As to the first element, the complaint does not contain, and neither side has provided, a description of Plaintiff's official responsibilities.  As to the second element, the First Circuit summarized a number of relevant factors in <u>Decotiis</u>, including:

> (1) whether the employee was commissioned or paid to make the speech in question; (2) the subject matter of the speech; (3) whether the speech was made up the chain of command; (4) whether the employee spoke at her place of employment; (5) whether the speech gave objective observers the impression that the employee represented the employer when she spoke (lending it "official significance"); (6) whether the employee's speech derived from special knowledge obtained during the course of her employment; and (7) whether there is a so called citizen analogue to the speech.[62]

Although the court's analysis is relatively uninformed at this stage, viewing the complaint in the light most favorable to Plaintiff, the majority of <u>Decotiis</u> factors come out in his favor.  First, there is no indication in the complaint that Plaintiff was literally "commissioned or paid" to make the speech at issue.  Second, Plaintiff did not make his statements directly up the chain of command to his immediate supervisor.  Rather, Plaintiff made complaints to news organizations, the mayor, a city councilor, an animal control officer, and the Conservation Commission.  Third, Plaintiff appears to have spoken based on personal observations from his home in Quincy, not based on any special knowledge gained through employment.  Finally, Plaintiff's complaints to news organizations and city officials are sufficiently analogous to the speech of other concerned

---

[61] <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 26, 35 n.15 (1st Cir. 2011) ("[T]he fact-intensive nature of the <u>Garcetti</u> analysis does not easily lend itself to dismissal on a Rule 12(b)(6) motion.").

[62] <u>Cruz v. P.R. Power Auth.</u>, 878 F. Supp. 2d 316, 325 (D.P.R. 2012) (citing <u>Decotiis</u>, 635 F.3d at 32).

citizens in the community.[63]

At least one of the Decotiis factors favors Defendants.  The subject matter of Plaintiff's speech – violations and enforcement of city ordinances – is undoubtedly related to Plaintiff's employment as a city police officer.

The court cannot assess the remaining factors without a more developed factual record. The complaint contains no allegations as to whether Plaintiff made any of the statements in question at his place of employment.  And, the court lacks sufficient information to determine whether Plaintiff's speech bore the appearance of official status.

At this stage, the court cannot conclusively determine whether Plaintiff spoke as a citizen or pursuant to his official duties.  Considering the above factors, and indulging all reasonable inferences in Plaintiff's favor, the complaint plausibly alleges that Plaintiff spoke out as a concerned citizen and resident of the affected community, rather than as a police officer.[64]

3.    Balancing Interests

Under the third prong, the court must balance three interests.  These interests include: (1) the employee's First Amendment interest "in commenting on matters of public concern;"[65] (2) the public's interest in the information the employee sought to impart;[66] and (3) "the government

---

[63] See, e.g., Comp. Ex. C (Boston Globe article) (starting with "Plaintiff has defenders among his neighbors . . . .").

[64] It is unclear from the complaint whether Plaintiff is claiming that his issuance of citations is protected speech.  To the extent that Plaintiff intends to rely on this argument, his claim must fail.  Under Garcetti, Plaintiff's issuance of citations was clearly done pursuant to his official duties as a police officer and is not protected by the First Amendment.

[65] Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).

[66] O'Connor v. Steeves, 994 F.2d 905, 912, 915 (1st Cir. 1993).

employer's legitimate interest in preventing unnecessary disruptions and inefficiencies in carrying out its public service mission."[67]  The speech is only protected if the interests of the employee and the public outweigh the interests of the government employer.

This balancing is guided by the principle that "[s]o long as employees are speaking as citizens on matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."[68]  "In assessing the government's interest in allaying disruption and inefficiencies in the workplace, a court should include in its considerations (1) 'the time, place, and manner of the employee's speech,' and (2) the employer's motivation in making the adverse employment decision.'"[69]  This balancing "requires a hard look at the facts of the case, including the nature of the employment and the context in which the employee spoke."[70]

As in Decotiis, "[t]he posture of the case makes such a 'particularized' inquiry relatively uninformed, especially when assessing the government's interests."[71]  The complaint contains few allegations regarding the time, place, and manner of Plaintiff's speech.  Nevertheless, the court attempts the required balancing.

On one side of the scale, the value of at least some of Plaintiff's speech appears

---

[67] Id. at 915.

[68] Garcetti, 547 U.S. at 419.

[69] Decotiis v. Whittemore, 635 F.3d 22, 35 (1st Cir. 2011) (quoting Davignon v. Hodgson, 524 F.3d 91, 104 (1st Cir. 2008)).

[70] Id. (citing Davignon, 524 F.3d at 104).

[71] Id. at 36 (citing Jordan v. Carter, 428 F.3d 67, 73 (1st Cir. 2005)).

significant.[72]  Plaintiff had a legitimate interest in speaking out regarding widespread violations

and non-enforcement of dog ordinances in Quincy.  The public also had a legitimate interest in

receiving this information.  As the court has little information on the particulars of Plaintiff's

speech, the court has no basis to discount Plaintiff's and the public's interests.[73]

On the other side of the scale, the weight of the government employer's interest is

uncertain at this stage.  Government employers generally have a heightened interest in maintaining

discipline and harmony in the law enforcement context.[74]  Defendants, however, have not shown

that Plaintiff's statements to news organizations and city officials disrupted or threatened to

disrupt police department operations.  The complaint indicates that there was some disruption in

the police department during the relevant time period, including citizen complaints and tension

between Plaintiff and his supervisors.  Defendants have not demonstrated that this disruption was

attributable to Plaintiff's allegedly protected speech, rather than other factors, so as to justify

penalizing him on speech-related grounds.[75]

The court must also consider the employer's motivation behind the adverse employment

decisions.  Taking all well-pleaded facts as true, Defendants' motivation behind their adverse

---

[72] See Jordan, 428 F.3d at 74 ("[O]ur starting point is that such information about public welfare and public officials is of significant weight . . . ."); see also Garcetti, 547 U.S. at 425 ("Exposing governmental inefficiency and misconduct is a matter of considerable significance.").

[73] See Jordan, 428 F.3d at 74.

[74] Curran v. Cousins, 509 F.3d 36, 50 (1st Cir. 2007).

[75] See, e.g., O'Connor v. Steeves, 994 F.2d 905, 916 (1st Cir. 1993).  The disruption could have just as likely been caused by Plaintiff's other unprotected conduct, such as issuance of citations to neighbors, which Plaintiff does not allege to be the basis for the adverse employment decisions.  At this stage, the court cannot assume that Plaintiff's statements to news organizations and city officials caused the disruption.

employment decisions was anger and retaliation for protected speech, not concern for workplace disruption or the efficient provision of public services.[76]

Considering the above factors, it is plausible that the relevant interests of Plaintiff and the public outweigh those of the government employer.  Accordingly, Plaintiff has alleged a plausible claim under 42 U.S.C. § 1983 for violation of his First Amendment rights.

      iii.   <u>Qualified Immunity</u>

Finally, the individual Defendants move for dismissal based on qualified immunity.

The Supreme Court has articulated a two-step procedure for determining qualified immunity.  The court must ask: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation."[77]  The second step, in turn, has two aspects: "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official."[78]  "[T]he salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional."[79]

This court has already determined that Plaintiff has alleged a plausible violation of his First

---

[76] Compl. ¶¶ 32, 36, 38, 50; <u>See</u> <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 36 (1st Cir. 2011); <u>Davignon v. Hodgson</u>, 524 F.3d 91, 105 (1st Cir. 2008); <u>Jordan</u>, 428 F.3d at 74.

[77] <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268-69 (1st Cir. 2009) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009)).

[78] <u>Diaz-Bigio v. Santini</u>, 652 F.3d 45, 50 (1st Cir. 2011).

[79] <u>Maldonado</u>, 568 F.3d at 269 (citing <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002)).

Amendment rights, satisfying the first step of the qualified immunity analysis.  Under the second

step, the court must assess the clarity of the law at the time of Defendants' alleged retaliatory

acts.  Plaintiff alleges retaliatory acts spanning from July 2009 until April 2012.

The general right that Plaintiff invokes – the right of a public employee to speak out as a

citizen on a matter of public concern without retaliation – was undoubtedly clearly established at

those times.[80]  "But qualified immunity requires that the general right be placed in a reasonably

specific context . . . ."[81]  The court must determine whether Plaintiff's right was clearly established

"in light of the specific context of the case, not as a broad general proposition."[82]

The court has insufficient information as to the specific context of this case to make such a

determination at this stage.  The complaint contains few allegations regarding the content and

context of Plaintiff's speech.  For instance, the complaint contains no allegations as to the timing,

location, substance, and tone of Plaintiff's statements to the mayor, city councilor, and animal

control officer.  Without this information, the court cannot determine whether there is any

"closely corresponding factual or legal precedent"[83] and whether Defendants acted in an

objectively reasonable manner.[84]  Like court in Jordan, "[w]e therefore cannot eliminate the

---

[80] See, e.g., Jordan, 428 F.3d at 74-75; Wagner v. City of Holyoke, 404 F.3d 504, 509 (1st Cir. 2005).

[81] Wagner, 404 F.3d at 509.

[82] Jordan, 428 F.3d 74 (quoting Suboh v. Dist. Attorney's Office of Suffolk, 298 F.3d 81, 93 (1st Cir. 2002)).

[83] Diaz-Bigio, 652 F.3d at 53 (quoting Frazier v. Bailey, 957 F.2d 920, 931 (1st Cir. 1992)).

[84] Defendants argue that they acted in an objectively reasonable manner in disciplining Plaintiff in light of the numerous citizen complaints against him.  Yet, at the motion to dismiss stage, the court must accept as true Plaintiff's factual allegation that Defendants were motivated

possibility that the facts once developed will show a violation of clearly established law."[85]

Defendants argue that they are entitled to qualified immunity because the legal contours of the <u>Garcetti</u> analysis were "cloudy" at the time of the alleged violations.[86]  Defendants also argue that because employee-speech law requires a fact-intensive balancing test, "it can <u>rarely</u> be considered 'clearly established' for purposes of qualified immunity."[87]  Yet, without more information, the court cannot determine whether this is one of those "rare" cases.[88]  Nor can the court determine whether this case falls into the borderline area where the contours of the law were still "cloudy" at the time of the alleged violations.[89]

The court recognizes that "immunity is often appropriate in cases involving public employee speech."[90]  "It is not an automatic entitlement, however, and a court may not cut off a plaintiff's claims based simply on the odds."[91]  The record before this court is insufficient to permit an informed determination of qualified immunity.  For this reason, Defendants' motion to

---

by anger and retaliation for protected speech, not by other factors such as citizen complaints.  <u>See</u> <u>Mihos v. Swift</u>, 358 F.3d 91, 109-10 (1st Cir. 2004); <u>see also</u> <u>Broderick v. Roache</u>, 996 F.2d 1294, 1297-98 (1st Cir. 1993).  Accordingly, Defendants' argument is unavailing at this stage.

[85] <u>Jordan</u>, 428 F.3d 75.

[86] Defs.' Resp. 9 [#24] (quoting <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 37 (1st Cir. 2011)).

[87] Defs.' Resp. 10 (emphasis added) (quoting <u>Fabiano v. Hopkins</u>, 352 F.3d 447, 457 (1st Cir. 2003)).

[88] <u>See</u> <u>Jordan</u>, 428 F.3d 75.

[89] <u>See</u> <u>Roldan-Plumey v. Cerezo-Suarez</u>, 115 F.3d 58, 66 (1st Cir. 1997) ("To be sure, the law may still be blurred around the edges.  But this is not a borderline case.").

[90] <u>Jordan</u>, 428 F.3d 76.

[91] <u>Id.</u>

dismiss based on qualified immunity is denied.  Defendants may raise the issue of immunity at summary judgment or trial.[92]

IV.    Conclusion

    For the above-stated reasons, Defendants' Motions to Dismiss [#12, #14] are DENIED as to Plaintiff's First Amendment claim, and ALLOWED as to Plaintiff's Equal Protection claim.


AN ORDER HAS ISSUED.

                           /s/ Joseph L. Tauro
                           United States District Judge

---

[92] See id. ("[D]enial of immunity at the motion-to-dismiss stage does not preclude renewal of the defense in a subsequent motion for summary judgment or at trial.").